1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 28, 2024

SEAN F. McAVOY, CLERK

4          UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF WASHINGTON

5

6    VALERIE L.,[1]                    No.    1:24-cv-03076-EFS

7                      Plaintiff,

8          v.                          **ORDER AFFIRMING THE ALJ'S
                                       DENIAL OF BENEFITS**

9    MARTIN O'MALLEY, Commissioner of
     Social Security,

10

11                     Defendant.

12

13

14          Due to migraine headaches, tension headaches, and degenerative disc

15   disease of the spine, Plaintiff Valerie L. claims she is unable to work full-time and

16   applied for social-security benefits. She appeals the denial of benefits by the

17   Administrative Law Judge (ALJ) on the grounds that the ALJ improperly analyzed

18   the credibility of Plaintiff's subjective complaints and the third-party witness

19   statements, and the ALJ's evaluation of the medical expert opinions was flawed.

20   _____

21

22   [1] For privacy reasons, Plaintiff is referred to by first name and last initial or as

23   "Plaintiff." *See* LCivR 5.2(c).

DISPOSITIVE ORDER - 1

Although the record reflects that Plaintiff's impairments limit her physically, the Administrative Law Judge's (ALJ) finding of non-disability is adequately explained and supported by substantial evidence. For the reasons that follow, the ALJ's decision is affirmed.

## I.    Background

In June 2019, Plaintiff filed an application for benefits under Title 2, claiming disability beginning December 1, 2017, based on the physical impairments noted above.[2] After the agency denied her application initially and on reconsideration, Plaintiff requested a hearing before an ALJ.[3] ALJ Gregory Moldafsky held a telephonic hearing in January 2021, during which Plaintiff and a vocational expert testified.[4] ALJ Moldafsky issued a decision denying the claim, and the Appeals Council denied Plaintiff's request for review.[5] Plaintiff timely filed suit in this Court, and in March 2023 the Court remanded the case back to the Commissioner for further proceedings.[6]

---

[2] AR 240-241, 253.

[3] AR 167-182.

[4] AR 117-147.

[5] AR 12-28, 1-6.

[6] AR 863-867, 870-888.

On December 20, 2023, ALJ Evangeline Mariano-Jackson (the ALJ) held a hearing via telephone, at which Plaintiff and a vocational expert testified.[7] After the hearing, the ALJ issued a decision denying benefits.[8] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[9] As to medical opinions, the ALJ found:

- The opinions of state agency evaluators Merry Alto, MD, and Norman Staley, MD, that there was insufficient evidence to evaluate the claim prior to the date last insured to be not persuasive.

- The opinions of treating neurologist, Tony Lee, MD, to be not persuasive.

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017.

- Step one: Plaintiff had not engaged in substantial gainful activity between her alleged onset date of December 1, 2017, and her date last insured of December 31, 2017.

---

[7] AR 817-839.

[8] AR 795-816.  Per 20 C.F.R. § 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[9] AR 802-805.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

- Step two: Plaintiff had the following medically determinable severe impairments: tension headaches, migraines, and degenerative changes of the spine.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments and specifically considered Listing 1.15, 1.16, and 11.02.

- RFC:  Plaintiff had the RFC to perform work at the light exertional level with the following exceptions:

  > [Plaintiff can] stand and/or walk 6 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. [Plaintiff] can occasionally stoop, kneel, crouch, crawl, and climb ramps and/or stairs. [Plaintiff] can never climb ladders, ropes, or scaffolds. [Plaintiff] can never work in extreme heat or cold. [Plaintiff] can tolerate occasional exposure to fumes, gases, and odors. [Plaintiff] can tolerate moderate noise. [Plaintiff] can never be exposed to vibration or direct sunlight. [Plaintiff] can never work at unprotected heights or around moving mechanical parts.

- Step four: Plaintiff was unable to perform her past relevant work as a general duty nurse.

- Step five: Plaintiff was able to perform jobs available in the national economy in substantial numbers as an electrical accessories assembler (DOT 729.687-010), a marker (DOT 209.587-034), and a housekeeping cleaner (DOT 323.687-014).[10]

---

[10] AR 800-809.

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[11]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[12] and such error impacted the nondisability determination.[13] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14]

———————————————

[11] AR 264.

[12] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[13] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[14] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

### III.   Analysis

Plaintiff seeks relief from the denial of disability on three grounds. She argues the ALJ erred when evaluating Plaintiff's subjective complaints, erred in evaluating the third-party witness statements, and erred when evaluating the medical opinion of Dr. Lee.  The Commissioner argues there was no error because the ALJ reasonably assessed Dr. Lee's opinions, adequately explained that the witness statements were not consistent with the record, and reasonably discounted Plaintiff's allegations of disabling impairments during the relevant period.  As is explained below, the Court agrees with the Commissioner and affirms the ALJ's nondisability finding.

### A.   Symptom Reports: Plaintiff fails to establish consequential error

Plaintiff argues the ALJ failed to properly assess her subjective complaints regarding her migraine and tension headaches and her back pain for the period prior to December 31, 2017, her date last insured.

### 1.   Standard

When examining a claimant's symptoms, the ALJ utilizes a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[15] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony

---

[15] *Molina*, 674 F.3d at 1112.

about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing

reasons' for the rejection."[16] General findings are insufficient; rather, the ALJ must

identify what symptom claims are being discounted and what evidence undermines

these claims.[17] "The clear and convincing standard is the most demanding required

in Social Security cases."[18] Therefore, if an ALJ does not articulate specific, clear,

and convincing reasons to reject a claimant's symptoms, the corresponding

limitations must be included in the RFC.[19]

        2.   <u>Relevant Testimony</u>

               a.   <u>*Plaintiff's Testimony*</u>

On January 27, 2021, Plaintiff appeared with her attorney via telephone for a

---

[16] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[17] *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), and *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)).

[18] *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

[19] *Lingenfelter*, 504 F.3d at 1035 ("[T]he ALJ failed to provide clear and convincing reasons for finding Lingenfelter's alleged pain and symptoms not credible, and therefore was required to include these limitations in his assessment of Lingenfelter's RFC.").

hearing before ALJ Gregory Moldafsky.[20] She said that she lived in a one-story home with her mother and had no pets.[21] She said she has a driver's license.[22] When asked by the ALJ to consider the time period prior to December 31, 2017, Plaintiff said she was able to drive then and drove around Las Vegas before she moved back to Yakima to take care of her father in 2016.[23] When asked to focus on the period after returning to Yakima, Plaintiff said she drove her father to appointments or went to the grocery store.[24] She had migraines about 3 times a week and when she did her brother had to help her father.[25] When she had a migraine, she had to take medication and go to bed.[26] She has been on medication for years but the medication does not stop the migraines once they start.[27] Plaintiff said that her migraines were triggered by weather changes, too little sleep, not enough food or water, bright lights, strong scents, cigarette smoke, certain foods,

---

[20] AR 117-147.

[21] AR 122-123.

[22] AR 123.

[23] AR 124.

[24] AR 124-125.

[25] AR 125.

[26] *Id.*

[27] AR 126.

stress, and glare.[28] She said that it seemed to worsen over time and that she tried to avoid foods with preservatives and did not eat in restaurants.[29] She said she just started taking Emgality.[30]

Plaintiff said that her father was diagnosed with lung cancer in July 2016 and died seven months later.[31] She said that his treatment center was 5 minutes from home and that a second opinion confirmed it was the best option for him.[32] Plaintiff testified that a couple times a week she drove her father to his chemo treatments and sat with him and that when she was not able to go her brother took him.[33] She said that when she moved in with her parents her back was already an issue and that she went to a chiropractor because he had a payment plan for $50 a week and she hoped it would help so she went every week.[34] She was having pain in her low back on her right side and occasionally it would go down her back.[35] Plaintiff said that pain radiated down her left and right side and she could not sit

---

[28] *Id.*

[29] AR 126-127.

[30] AR 127.

[31] *Id.*

[32] AR 128.

[33] *Id.*

[34] AR 129.

[35] AR 129-130.

1    or stand and a doctor told her that it was from her low back.[36] After the doctor told

2    her the origin of her pain she was told to use a pillow when she sat.[37] Plaintiff said

3    she tried to do household chores such as a cleaning and washing dishes but would

4    have to stop to rest after 20 minutes.[38] Plaintiff said that in 2017 she could sit for

5    30-45 minutes and at the time of hearing could sit for 30 minutes.[39] She said she

6    can stand for no more than 5 minutes and that she has to lie down during the day

7    because she gets too tired.[40] Plaintiff said she would get tired because of low energy

8    and fatigue and that this has been the case since she started caring for her father

9    in 2016.[41]

10         Plaintiff testified that since her father passed away and she had been caring

11    for her mother her conditions have gradually worsened and that when she goes out

12    to do errands it takes her a couple days to recover.[42] She did not know how long it

13    would have taken her to recover back in 2016.[43] She said that in 2016 her brother

---

[36] AR 130.

[37] *Id.*

[38] *Id.*

[39] AR 131.

[40] *Id.*

[41] AR 132.

[42] *Id.*

[43] *Id.*

helped about three days a week, both when she had migraines and at other times.[44]
Plaintiff said she was taking medication for her back and had completed physical
therapy in the past but that after an MRI was performed she was told physical
therapy would not help her.[45] Plaintiff said that she was taking Tramadol,
tizanidine, and Tylenol.[46] She said she could carry 15-20 pounds.[47] She said she
could not be on her feet throughout the day but could carry 15-20 pounds one time
and put it down, but could not carry such weight all day.[48]

Plaintiff testified that she had been referred to a neurosurgeon but she only
wanted to undergo surgery as a last resort.[49] She said that she was undergoing an
injection but did not get relief from a prior injection.[50] Plaintiff testified that when
she had a migraine her neighbors were able to come over and take care of her
mother and that she did not know what she would do without them.[51] Plaintiff said
that there are days that she will be stiff and have no energy and needs to use her

---

[44] AR 133.

[45] *Id.*

[46] AR 134.

[47] *Id.*

[48] AR 135.

[49] AR 136.

[50] *Id.*

[51] *Id.*

1
2

mother's bath chair, and when asked explained that was currently and not in 2017.[52]

3
4
5
6
7
8
9
10
11
12
13

On December 20, 2023, Plaintiff appeared with her attorney via telephone for a hearing before ALJ Evangeline Mariano-Jackson.[53] Plaintiff testified that she completed college and had a bachelor's degree and that she is 5'2" and weighs 123 pounds.[54] Plaintiff was questioned whether her migraines worsened between 2014 when they were 2/10 to 2017 when they were 7/10 and answered that her headaches waxed and waned.[55] Plaintiff said that in March 2017 when Dr. Lee said her migraines were 7/10 she was dealing with her father's illness.[56] She said at that time she was getting migraines at least 3 times week.[57] She said that her migraines were bad enough that when she got them she would need to stay in bed and her brother would have to take their father to his chemo appointments.[58] Plaintiff said the medication made her fuzzy and she would need to go to bed, and

14
15
16

[52] AR 137.

17

[53] AR 818-839.

18

[54] AR 821-822.

19

[55] AR 825-826

20

[56] AR 826.

21

[57] *Id*.

22
23

[58] AR 826-827.

that no two migraines are the same.[59] She said that she has probably gotten about 3 headaches a week from 2017 to present.[60] Plaintiff testified that she changed her diet and tried to reduce stress to reduce the frequency of her migraines but she cannot control other triggers such as weather changes, smells, and bright lights.[61] Plaintiff stated that she was feeling pressure behind her eye and might be getting a migraine.[62] She said that she took medication daily but still had migraines.[63] Plaintiff testified that in 2017 she was taking Topamax, Depakote, Fioricet, Tramadol, Promethazine, and Vicodin, but that they discontinued Fioricet, Promethazine, and Vicodin.[64] Plaintiff said that once she had a migraine and had to take medication she would need to go to bed for 4–5 hours.[65] Plaintiff said that she would be in bed 3 times a week and that when she was not able to take care of her mother their neighbors would help them.[66] She said that in 2017 her brother

---

[59] AR 827.

[60] *Id.*

[61] AR 828.

[62] AR 829.

[63] *Id.*

[64] AR 830.

[65] AR 830-831.

[66] AR 831.

1   was still living in their parent's home and he helped her.[67] Her neighbors helped

2   until her mother was placed in a nursing home in April 2023.[68]  Plaintiff's mother

3   died in November 2023.[69]

4          Plaintiff said that she did not think that her medications helped her to

5   control her migraine headaches.[70] Plaintiff said that in 2002 she worked for

6   University of Nevada School of Medicine as an office nurse and that she worked as

7   an office nurse for 15 years.[71]

8              b.    *Relevant Witness Testimony*

9       1.  Maira A. – wrote that she is the caregiver for Plaintiff's mother for the

10          last two years and had witnessed Plaintiff struggle due to migraines and

11          back pain.[72] In a second written statement, Ms. A. stated that she had

12          seen first-hand how pain stopped Plaintiff from having the ability to

13          function or leave home.[73]

---

[67] *Id.*

[68] *Id.*

[69] AR 832.

[70] *Id.*

[71] *Id.*

[72] AR 310.

[73] AR 1104.

DISPOSITIVE ORDER - 14

2.  Mike S. – wrote that he is Plaintiff's neighbor and is one of the main personal care aides for Plaintiff's mother.[74]  He wrote that he often gets messaged from Plaintiff asking for help and he tries to do the heavy lifting.[75]

3.  Ben L. – wrote that he is Plaintiff's brother and lives with her and their mother, but he works and the care of their mother frequently falls on Plaintiff.[76] He wrote that there is presently in-home care for their mother and that their neighbors' children come in to move their mother.[77]

4.  Nayeli S. – wrote that she is Plaintiff's neighbor and has seen Plaintiff frequently shut herself in a dark room due to migraines.[78]

5.  [unnamed and unsigned] – Plaintiff's sister wrote that she helped her sister take care of their parents and did shopping and cooked meals because Plaintiff could not do so due to migraines and back pain, but that she took a job as a caregiver after her father's death and the care fell on Plaintiff.[79] She wrote that in 2020 she could no longer help Plaintiff care

---

[74] AR 313.

[75] *Id.*

[76] AR 314

[77] *Id.*

[78] AR 316.

[79] AR 1118.

1  for their mother and they had the neighbors' children start coming to

2  watch their mother at night and had an in-home care company coming in

3  during the day.[80]

4      3.    The Medical Record

5      Because the period at issue is from the alleged onset date of December 1,

6  2017, through the alleged onset date of December 31, 2017, the Court cites to only

7  those records, which are relevant to that time period.

8          a.    *Dr. Hyson*

9      From November 5, 2013 through September 8, 2016, Plaintiff was treated by

10  neurologist Morton Hyson, MD, for migraines and headaches.[81] Initially, Dr Hyson

11  prescribed Topamax in varying doses, Soma, and Fioricet, and ibuprofen as needed

12  but continued to experience three to five headaches a week.[82] In December 2014,

13  Dr. Hyson added Depakote to her medication, as well as a thermal-relief system.[83]

14  In June 2015, Dr. Hyson increased Plaintiff's dosage of Depakote ER because her

15  headaches were reported to be less frequent and less severe when taking it.[84] In

16  May 2016, Plaintiff reported that she was doing better and was continued on her

17  _____

18  [80] *Id.*

19  [81] AR 322-335.

20  [82] AR 324-325.

21  [83] AR 326.

22  [84] AR 328.

23

regimen of Depakote, Topamax, and Fioricet, and Ultram as needed.[85] In

September 2016, Dr. Hyson noted that Plaintiff had switched from taking

Depakote ER (extended release) to Depakote DR and had side effects but was

switched back to Depakote ER.[86]

b.    <u>*The Joint – The Chiropractic Place*</u>

Between January 30, 2014 and September 14, 2016, Plaintiff sought

treatment at The Joint for migraine headaches.[87] When instructed to rate her pain

level "right now" she indicated that her pain level was 2/10.[88]  The pain level rating

was carried on throughout the records and noted to be initially reported as a 2/10.[89]

Plaintiff's pain level rating was also noted to be 2/10 during several reevaluations

performed in 2014.[90]

c.    <u>*Washington Neurology*</u>

On March 9, 2017, Plaintiff presented to Tony Lee, MD, with complaints of

migraine headaches for 11 years but currently rated 7/10 in severity with "eyeball

pulling pain" since January 19, 2017, and which were accompanied by photophobia,

---

[85] AR 331.

[86] AR 331-332.

[87] AR 336-402.

[88] AR 340.

[89] AR 336-402.

[90] AR 343, 344, 346, 347, 348.

phonophobia, nausea, and vomiting.[91] Plaintiff reported that after finding out she had a soy allergy she limited soy and the headaches continued but were no longer accompanied by aura.[92] Stressors included taking care of her parents and selling her home.[93] Plaintiff was currently taking Topamax and Depakote daily and taking Fioricet, Tramadol, promethazine, and Vicodin as needed.[94] On physical examination, all systems were normal.[95] Dr. Lee diagnosed episodic tension-type headaches, not intractable; and migraine without aura, not intractable, without status migrainosus.[96] Dr. Lee continued her medications.[97]

On June 9, 2017, Plaintiff presented to Dr. Lee for follow-up.[98] She reported that her father had passed away and her mother was having a hard time, and that she had multiple invitations to wedding and graduation ceremonies upcoming.[99]

---

[91] AR 420.

[92] *Id.*

[93] *Id.*

[94] *Id.*

[95] AR 420-421.

[96] AR 422.

[97] *Id.*

[98] AR 424.

[99] *Id.*

1   Plaintiff's examination was within normal limits and Dr. Lee again continued her

2   current medication regimen.[100]

3           On February 12, 2018, Plaintiff presented to Dr. Lee with complaints of bad

4   headaches for the last two weeks and reported that the use of hydrocodone for the

5   pain had caused severe constipation.[101] Plaintiff still had many stressors and on

6   examination was found to be suffering from fatigue, nausea, back pain, and

7   headaches.[102]Dr. Lee diagnosed episodic tension-type headaches, not intractable;

8   and migraine without aura, not intractable, without status migrainosus, and

9   advised Plaintiff that she needed to manage triggers and stressors, as she was

10  already on multiple medications.[103]

11          On June 1, 2018, Plaintiff presented to Dr. Lee for follow-up and reported

12  that she was doing well with headaches and would be going to Spokane with family

13  and friends.[104] Dr. Lee diagnosed episodic tension-type headaches, not intractable;

14  and migraine without aura, not intractable, without status migrainosus, and

15  advised Plaintiff to continue on her current medication regimen.[105]

16  _____

17  [100] AR 425-426.

18  [101] AR 428.

19  [102] *Id.*

20  [103] AR 430.

21  [104] AR 432.

22  [105] AR 434.

23

On March 4, 2019, Plaintiff presented to Dr. Lee with complaints that she was "battling with headaches" because her insurance was not covering 200 mg of Topamax and would only cover 150 mg.[106] Dr. Lee reviewed a recent MRI of the lumbar spine taken in 2018 and noted that he indicated mild disc bulge at L3-4, L4-5, and L5-S1; posterolisthesis of the L5-S1; moderate L3-4 stenosis and mild to moderate stenosis at right L3-4 and bilateral L4-5, and L5-S1; and degenerative disc disease most severe at L3-4 and L4-5.[107] On examination Plaintiff was positive for back pain and headache.[108] Dr. Lee diagnosed episodic tension-type headaches, not intractable; and migraine without aura, not intractable, without status migrainosus; spondylolisthesis, lumbar region; and intervertebral disc degeneration, lumbar region.[109] Dr. Lee continued Plaintiff's medication and prescribed traction and physical therapy with core exercises.[110]

On April 8, 2019, Plaintiff returned for follow-up for back pain and presented with back pain and headache.[111] Dr. Lee noted that an EMG performed

---

[106] AR 436.

[107] *Id.*

[108] AR 436-437.

[109] AR 438.

[110] AR 438-439.

[111] AR 440.

that day[112] showed a prolonged H wave with history of right tibial nerve injury, which was consistent with L5-S1 etiology.[113] Dr. Lee prescribed a 15 day trial of Diclofenac.[114] .[115] Dr. Lee diagnosed episodic tension-type headaches, not intractable; and migraine without aura, not intractable, without status migrainosus; spondylolisthesis, lumbar region; intervertebral disc degeneration, lumbar region; and tarsal tunnel syndrome, right lower limb.[116]

### d.    *Prosser Comprehensive Pain Clinic*

On August 8, 2018, Plaintiff presented to John Groner, MD, for a consultation on the referral of her primary care provider.[117] She reported back pain that radiated into her left posterior thigh and leg, and is aching, throbbing, numb and burning in nature and was rated a 4-5/10.[118] Plaintiff reported that she had injured her back from a fall in a casino 12 years prior and that she had pain that came and went but had worsened after she injured it in June when moving her

---

[112] AR 446-447.

[113] AR 442.

[114] *Id.*

[115] AR 436-437.

[116] AR 444.

[117] AR 403.

[118] *Id.*

mother.[119] Plaintiff was positive for headaches and back pain.[120] On examination, she had discomfort on palpation to the left hip abductors, negative SLR and clonus, 5/5 lower extremity strength except 4/5 strength L5 innervated muscle weakness, and reduced light touch sensation at L3, L4, L5 and S1.[121] Dr. Groner assessed lumbar radiculopathy, lumbar facet pain, muscle pain, and knee pain.[122] He noted that he would order an MRI to determine the reason for Plaintiff's weakness and sensory dysfunction.[123]

### e.    Chiropractic Health Center

On August 10, 2016, Plaintiff presented to Jim Patton, DC, for treatment of migraine headaches, neck pain, and spine pain.[124] She reported that she had x-rays, MRI, CT scan, and lab tests performed and that she was taking the following medications: Topamax, Depakote, Fioricet, and Tramadol.[125] Plaintiff reported that she had pain in her head, shoulder, mid back, low back, and hip and that it affected

---

[119] Id.

[120] AR 404.

[121] AR 405.

[122] AR 406.

[123] Id.

[124] AR 515.

[125] Id.

her ability to sleep, rest, stand, climb stairs, and do housework.[126] Plaintiff said her pain was a 2-3 or 10 and was occasional, mild, intermittent pain that was getting better.[127] Plaintiff reported that she had mild migraines and had not had a migraine for 3 weeks after switching her bed and pillows and going to a church healing mass.[128] On August 17, 2016, Plaintiff reported that she had lifted two 40 pound water packs out of a cart and into a Jeep and reported that her chiropractic treatment had decreased her pain.[129] On August 25, 2016, Plaintiff reported that she needed to use a new mattress; on October 5, 2016, she reported that her brain was working better; and on October 12, 2016, Plaintiff reported that she was using a seat cushion and her pain had decreased overall with chiropractic care.[130] On October 19, 2016, Plaintiff reported having 4 migraines with nausea in the last week triggered by stress and weather.[131] On October 27, 2016, Plaintiff reported that sugar seemed to trigger headaches and she reported on November 3, 2016,

---

[126] AR 516.

[127] *Id.*

[128] AR 518.

[129] *Id.*

[130] *Id.*

[131] *Id.*

that she was limiting sugar, but on November 11, 2016, she reported that she had 2 headaches the week prior in the afternoon.[132]

On November 17, 2016, Plaintiff repeated that she had 2 migraines the prior week and thought she should get a new mattress.[133] On November 30, 2016 and December 6, 2016, Plaintiff did not report migraines but at her December 13, 2016 visit Dr. Patton noted that he was referring Plaintiff to a neurologist because she was having one headache a week.[134] Dr. Patton also noted that Plaintiff reported she had shoveled snow from the sidewalk.[135] On December 27, 2016, Dr. Patton noted that Plaintiff slipped on ice and had bruised her knee and had a headache for 3 days.[136] On visits on January 3, 10, and 17 of 2017, Plaintiff reported feeling dizzy but did not report headaches un January 24, 2017, when she reported a migraine after sleeping on the sofa.[137]

On January 31, 2017, Plaintiff reported a headache with nausea when en route home from her appointment.[138] On February 7, 2017, Plaintiff reported that

---

[132] *Id.*

[133] AR 519.

[134] *Id.*

[135] *Id.*

[136] *Id.*

[137] *Id.*

[138] AR 520.

she woke at 4:30 am with a migraine but was good over the weekend; and on February 14, 2017, she reported that she had no headaches until Sunday night.[139] Plaintiff also reported that she was not sleeping and was having trouble lifting her parents in and out of bed and had sold her house in Las Vegas.[140] On March 17, 2017, Plaintiff reported that her feet and back were sore from helping her parents by herself and she reported no headaches at that visit or on March 26, 2017 and April 6, 2017.[141] Plaintiff did report on April 12, 2017, that she had a migraine after eating Philippino food.[142]

On May 11, 19, and 26 of 2017, Plaintiff reported that she was shopping, cooking, and chauffeuring and lifting her mother by herself.[143] On June 1, 2017, Plaintiff reported that her brother was back in town but she had no migraines.[144] At appointments on June 8, 2017 and June 16, 2017, Plaintiff reported wedding and graduation invitations and events and said she was doing a lot of work caring for her mother but reported no headaches or migraines.[145] On June 26, 2017,

---

[139] *Id.*

[140] *Id.*

[141] *Id.*

[142] *Id.*

[143] AR 521.

[144] *Id.*

[145] *Id.*

Plaintiff reported fatigue, and on July 6, 2017, she reported pain in her shoulder and back from lifting her mother daily.[146]

On July 12, 2017, Plaintiff reported that her neighbor was now an intermittent home helper but she reported no headache or migraine.[147]  On July 16, 2017, Plaintiff did not report any headaches but reported a headache at her July 26, 2017 appointment.[148] On August 2, 2017, Plaintiff reported a migraine that was light sensitive and was triggered by smoke and heat and on August 9, 2017 reported a mild headache most likely from air quality.[149] On August 15, 2017 and August 25, 2017, Plaintiff reported no headaches but did report that she would be leaving for one month to travel to Arizona in a motorhome.[150] On her return from her travel to Arizona on September 26, 2017, Plaintiff reported mild back pain but no headaches and at her next appointment on October 4, 2017, she reported having a headache for 2 days and stiffness since vacation.[151]

---

[146] *Id.*

[147] AR 522.

[148] *Id.*

[149] *Id.*

[150] *Id.*

[151] *Id.*

At follow up appointments on October 11, 2017, October 17, 2017, and October 27, 2017, Plaintiff did not report back pain or headaches.[152] On November 1, 2017, Plaintiff complained of back pain from lifting her mother at home daily, and on November 7, 2017, Plaintiff reported that she was doing more lifting because her brother was working more.[153] On November 14, 2017, Plaintiff reported a headache after she had eaten soy at a restaurant, and on November 22, 2017, she reported mild shoulder pain after lifting a 24 pound turkey.[154] On November 28, 2017, Plaintiff reported that her brother was working and that handling her mother was affecting her back and on December 6, 2017, she reported that she had home help 2 days a week and was going to get home help 2 nights a week.[155] On December 14, 2017, Plaintiff reported a mild headache due to irregular sleep schedules from helping her mother at night and at a follow-up on December 20, 2017, Plaintiff reported just mild neck pain and a headache.[156]

On December 22, 2017, Plaintiff reported that she had "tweaked" her back when lifting her mother and had a migraine and mild low back pain.[157] On January

---

[152] AR 522-523.

[153] AR 523.

[154] *Id.*

[155] *Id.*

[156] AR 523-524.

[157] AR 524.

3, 2018, she reported mild neck and back pain due to irregular sleep; on January 11, 2018, she reported low back pain from lifting her mother; and on January 18, 2018, she reported a gradual onset of mild to moderate back pain due to lifting her mother.[158] On February 7, 2018, Plaintiff reported a headache and neck pain due to the physical and emotional stress of caring for her mother.[159]

On March 20, 2018, Plaintiff reported that she strained her back when she rotated to the right while unloading a laundry basket.[160] On May 17, 2018, Plaintiff reported left lower back pain after tripping, but on May 25, 2018, she reported that she had loaded a heavy ham and cases of water into her car when shopping.[161] On June 22, 2018 and June 29, 2018, Plaintiff reported left lower back pain and sciatica after a lifting injury at home.[162] At none of the eight appointments Plaintiff attended between March 20, 2018, and July 27, 2018, did she complain of migraines or headaches.[163] On August 14, 2018, Dr. Patton ordered an MRI of the lumbar spine.[164]

---

[158] *Id.*

[159] *Id.*

[160] AR 525.

[161] *Id.*

[162] *Id.*

[163] *Id.*

[164] AR 526.

1

2
3
4
5

  4. <u>The ALJ's Findings</u>

  The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms of her medically determinable impairments not entirely consistent with the medical evidence and other evidence in the record.[165]

6
7
8

  With regard to Plaintiff's issues with her tension headaches and migraine headaches, the ALJ articulated her reasoning in a lengthy paragraph which began as follows:

9
10
11
12
13

> While the claimant had problems with migraine headaches prior to the date last insured, the record indicates that they were not as chronic or as severe as she has described. For instance, although medical records from Dr. Hyson from November 2013 through September 2016, indicate that the claimant was experiencing migraine headaches, with variable relief from her medications (1F), she regularly rated her migraines at only 2 out of 10 in severity during her appointments at the Joint Chiropractic in 2014 and 2015 (See e.g., 3F7-12, 14-15, 23, 25-42, 48-52). . .[166]

14
15
16
17

  The ALJ went on to cite to the medical records of Chiropractic Health Center recited above, noting further that in the time period immediately prior to and during the relevant period between December 1, 2017, and December 31, 2017, the records indicated as follows:

18
19
20

> While she complained of a headache that lasted two days on October 4, 2017 (9F13) and she reported having a headache when she was sick on November 14, 2017, treatment notes on October 11, 2017, October 17, 2017, October 27, 2017, November 11, 2017, November 7, 2017,

21
22
23

---

[165] AR 25.

[166] AR 802.

November 22, 2017, November 28, 2017, and December 6, 2017 document no significant headache complaints (9F14). On December 14, 2017, she complained of a mild headache because of her irregular sleeping schedule, which was due to her mom's wake ups at night (9F14). On December 20, 2017 and December 22, 2017, she described having just mild headaches (9F15). Although the claimant continued to have headaches prior to the date last insured that were usually triggered by poor food choices, environmental factors, and stress over her parents' health, the above evidence indicates that her headaches occurred only intermittently and were often only mild or 2/10 in severity.[167]

The ALJ went on to reason that Dr. Lee's medical records did not document any contemporaneous report of a migraine or tension headache during her examinations, nor did she ever need to seek urgent care from Dr. Lee or any emergency room for any headache despite claims that her headaches were debilitating.[168]

With regard to the issue of Plaintiff's back impairment, the ALJ articulated the following reasoning:

In terms of the claimant's spinal disorder, imaging studies in October 2017 showed mild osteoarthritis at C5-6 (9F19) and moderate degenerative changes at L3-4 (9F21). The claimant's spinal complaints, though, are not fully consistent with the conservative nature of her treatment, which consisted of only chiropractic care prior to the date last insured (3F' 0F). Her spinal complaints are also not fully consistent with her benign examinations during the period at issue. For example, when seen on April 1, 2017, she had a normal inspection of the back, including normal range of motion and no costovertebral angle tenderness. She also showed normal range of motion of the lower extremities (14F43). When seen on March 9, 2017 and June 9, 2017, she had no evidence of musculoskeletal

---

[167] AR 803.

[168] AR 804.

1

2

3

misalignment, asymmetry, crepitation, defects, tenderness, mases, effusions, decreased range of motion, instability, atrophy, or abnormal strength or tone in the neck, spike, ribs, or pelvis. She also had an appropriate gait, stance, tiptoes, heel, heel to toe, and swing phase (5F4-5, 8-9).[169]

4

5

6

7

8

9

Additionally, the ALJ noted that Plaintiff's allegations were not consistent with the wide range of activities that Plaintiff engaged in which included taking care of her parents; lifting 40-pound water packs; driving long distances; engaging in household chores such as cooking, cleaning and shopping; traveling between Las Vegas and Washington; attending a number of weddings and graduations; and taking a monthlong motorhome trip to Arizona.[170]

10

    4.  <u>Analysis</u>

11

12

13

14

15

16

17

18

19

The ALJ's reasoning describes three instances in which she found Plaintiff's subjective allegations to be at odds with the record:  that Plaintiff was able to engage in activities of daily living and work in stressful and demanding jobs during the relevant time period, that Plaintiff's medical record indicates that she had predominantly benign findings on examination in the relevant time period, and that the medical record indicates that even Plaintiff's moderate symptoms appear to have been successfully treated with medication during the latter part of the relevant period.  Throughout her brief, Plaintiff argues that the ALJ's reasoning fails to consider that Plaintiff suffered from anxiety when she left home.

20

21

22

23

[169] AR 804-805.

[170] AR 805.

1

　　　　　*a.*　*Plaintiff's activities*

2    The ALJ considered that Plaintiff's activities and abilities were inconsistent

3  with her symptom reports.[171] If a claimant can spend a substantial part of the day

4  engaged in pursuits involving the performance of work-related functions, the ALJ

5  may find these activities inconsistent with the reported disabling symptoms.[172]

6  Here, the ALJ highlighted that Plaintiff's activities were quite numerous and in

7  large part inconsistent with her claims of disabling limitations.[173]

8    Plaintiff's activities can be grouped into two separate categories:  those

9  which were performed in caring for her parents and those that she performed for

10  her own interests and leisure.  It is noted that Plaintiff took a month-long vacation

11  in which she traveled more than 1300 miles by motorhome to Arizona.[174] The

12  record reflects that Plaintiff did in fact take that vacation and that when she

13  returned from that travel, she reported only mild back pain and no headaches.[175]

14

15

16

　　　　　　　　　　　　　　　　　　　　　　

17  [171] AR 26-27.

18  [172] *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (superseded in part on

19  other grounds by statute).

20  [173] SAR 805-806.

21  [174] AR 804.

22  [175] AR 522-523.

23

1    The ALJ also noted that Plaintiff took 220-mile trips from Puyallup to Tillamook

2    and attended a number of weddings and graduations.[176]

3          The ALJ reasonably found that Plaintiff's activities in caring for her parents

4    is equally, if not more, inconsistent with her allegations.  The record contains

5    numerous indications that Plaintiff cared for her parents.  The ALJ cited to

6    medical records in which Plaintiff reported consistently that she cooked, shopped,

7    cleaned, and even lifted her parents.[177]  The medical records indicate that Plaintiff

8    reported engaging in heavy exertion both immediately prior to and immediately

9    after the relevant period.

10          While Plaintiff has claimed that she did not care for her parents or had

11    others helping her, the records belie that fact.  On November 1, 2017, Plaintiff

12    complained of back pain from lifting her mother at home daily and on November 7,

13    2017, Plaintiff reported that she was doing more lifting because her brother was

14    working more.[178] On November 22, 2017, she reported mild shoulder pain after

15    lifting a 24 pound turkey.[179] On November 28, 2017, Plaintiff reported that her

16    brother was working and that handling her mother was affecting her back, and on

17    December 6, 2017, she reported that she had home help 2 days a week and was

---

[176] AR 804.

[177] AR 805.

[178] AR 523.

[179] *Id.*

1    going to get home help 2 nights a week.[180] On December 14, 2017, Plaintiff

2    reported a mild headache due to irregular sleep schedules from helping her mother

3    at night.[181] On December 22, 2017, Plaintiff reported that she had "tweaked" her

4    back when lifting her mother and had a migraine and mild low back pain.[182] But on

5    January 18, 2018, she reported she was still lifting her mother.[183] On March 20,

6    2018, Plaintiff reported that she strained her back when she rotated to the right

7    while unloading a laundry basket, and on May 25, 2018, she reported that she had

8    loaded a heavy ham and cases of water into her car when shopping.[184]

9         While Plaintiff argues that she was not the person who was caring for her

10   mother or  that she had in-home assistance, the record does not support that

11   Plaintiff was not caring for her mother. The Court finds no error in the ALJ's

12   reasoning regarding Plaintiff's ability to engage in a wide range of exertional

13   activities during the relevant period.

14         b.    _Severity and Frequency of Migraine and Tension Headaches_

15

16

17

---

18   [180] _Id._

19   [181] AR 523-524.

20   [182] AR 524.

21   [183] _Id._

22   [184] AR 525.

23

1
2
3
4
5
6
7
8
9

The ALJ found that the objective findings in the record are also not consistent with chronic debilitating symptoms.[185] Objective medical evidence—signs, laboratory findings, or both—is a relevant factor for the ALJ to consider when assessing a claimant's symptoms.[186] Here, the medical record also supports the ALJ's reasoning.  While Plaintiff correctly points out that there is no objective test by which a plaintiff can prove a migraine, it is uncommon that an individual who suffers from migraines of the severity and frequency alleged by Plaintiff has not sought emergency room treatment or urgent care from their treating source on at least one occasion.  The record is devoid of any such emergent treatment.

10
11
12
13
14
15
16

Additionally, while Plaintiff's reports that her migraine and headaches were a 2/10 in severity was prior to the relevant period, her reports of tension headaches during the relevant period is inconsistent with the severity she alleges, as she did describe them as "mild" on several occasions.[187]  Her reports of migraines are not necessarily inconsistent with the severity alleged but are not consistent with the frequency alleged, as she only reported five migraines from January 1, 2017, to December 31, 2017, and at least one of those migraines was caused by eating soy,

17
18
19
20
21
22
23

---

[185] AR 25.

[186] 20 C.F.R. § 416.902(k); 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[187] AR 515-526.

1    which she knew she should not eat.[188] Plaintiff argues that she had migraines more

2    frequently but that argument is incorrect because she both inflates the number and

3    she seeks to treat tension headaches in the same manner as migraine headaches.

4    Migraine headaches are distinctly different than tension headaches, as they are

5    accompanied by aura and sensitivity to light, sound, and smell.[189]  Tension

6    headaches are the most common type of headaches and are characterized as

7    occurring more frequently while migraine headaches are less common and less

8    frequent and are recognized to be more severe and debilitating than tension

9    headaches.[190]

10        Moreover, Plaintiff's treating source, Dr. Lee, opined that Plaintiff's

11    medications were stable and continued her medication regimen and Dr. Hyson

12    thought that Plaintiff's condition was stable once she reported that she was "doing

13    better" after adding Depakote to her medications.[191]

14        c.    _Plaintiff's Complaints of Disabling Back Pain_

15

16    _____

16    [188] AR 520-524.

17

18    [189] Mayo Clinic, Migraine with aura - Symptoms & causes - Mayo Clinic,

19    www.mayoclinic.org/diseases-conditions/migraine-with-aura (last viewed October

    15, 2024.)

20

21    [190] Medical News Today, How to tell the difference between migraine and headaches,

22    www.medicalnewstoday.com/articles/324890. (Last viewed October 15, 2024.)

    [191] AR 328.

23

1   Plaintiff argues that the ALJ erred in her reasoning that Plaintiff's claims of

2   debilitating back pain were inconsistent with the record.  The Court disagrees.  As

3   the Court noted above when addressing Plaintiff's activities of daily living, Plaintiff

4   engaged in activities which were far in excess of those one would expect from a

5   person limited to the sedentary level, as Plaintiff alleges to be.  In particular,

6   Plaintiff was reporting that she was lifting her mother up to and even past her

7   date last insured.  She also reported that she was lifting and carrying 40 pounds

8   and driving a distance in excess of 200 miles on at least two occasions in addition to

9   driving 1300 in a motor home both to and from Arizona.

10   While Plaintiff is correct that she was prescribed narcotic medication and

11   that this is not strictly to be construed as "conservative care" that fact should be

12   taken in context that even during the time that she was taking that medication she

13   was reporting to her doctors that she was lifting her mother on a daily basis and

14   that her heavy lifting was causing her pain.[192] The ALJ acknowledged that

15   Plaintiff had been prescribed narcotic medication but also noted that Plaintiff was

16   not receiving injections or receiving any other type of invasive treatment. In light

17   of the totality of evidence, the Court finds that substantial evidence in the record

18   supports the ALJ's findings.

19   While the medical record might be interpreted in a different manner, it is

20   not the duty of the Court to reweigh the evidence, but instead to determine

21

22   [192] AR 523-524.

23

1    whether substantial evidence supports the ALJ's decision.  The Court concludes

2    that the ALJ has adequately explained her reasoning.  The Court declines to

3    remand as to this issue.

4    **B.    Third-party witness statements: Plaintiff fails to establish**

5    **consequential error.**

6         Plaintiff argues that the ALJ violated the law of the case because she did not

7    properly consider the witness testimony, as directed by the Court in its prior

8    Order.  The Court disagrees.

9              *a.    The Court's prior order*

10        When considering Plaintiff's prior appeal, the Court found that ALJ

11   Moldafsky erred in failing to articulate his consideration of the witness statements

12   that were then in the record.[193]  The Court stated:

13        [A]n ALJ is "not required to articulate how [he] considered evidence
          from nonmedical sources using the [medical-opinion] requirements . . .

14        ."[194] But while the ALJ need not utilize the medical-opinion
          articulation requirements when considering evidence from nonmedical

15        sources, the regulations do not state that the ALJ is not required to
          consider lay statements. Instead, the regulations specify that—except

16        for some specifically excluded items not encompassing lay statements
          about the nature, frequency, or intensity of a claimant's symptoms—

17   ───────────────────────

18   [193] The record presently before the Court includes additional witness statements

19   that were not present in the prior record.

20   [194] 20 C.F.R. § 404.1520c(b)(2) ("[W]e will explain how we considered the

21   supportability and consistency factors for a medical source's medical opinions or

22   prior administrative medical findings in your determination or decision.").

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

the ALJ "will consider all evidence in [the] case record when [making] a determination or decision" as to disability.[195] [196]

The Court noted that although the ALJ's findings regarding the witness statements need not be detailed the ALJ "must give reasons that are germane to each witness" and supported by substantial evidence with reasoning clear enough to permit meaningful review.[197]  The Court held that ALJ Moldafsky's error was consequential on the record in this case because the witness statements largely corroborated Plaintiff's allegations of disabling back pain and migraine headaches prior to the date last insured.[198]

     *b.*  <u>*The ALJ's findings*</u>

The ALJ cited to each of the witness statements specifically and noted the dates they were written and signed and then went on to articulate her consideration of the statements as follows:

> While the undersigned is not required to articulate the persuasiveness of these statements (See 20 CFR 404.1520c and 416.920c), the undersigned notes that these statements were all issued years after the date last insured of December 31, 2017. These statements are also not fully consistent with the medical records during the period at issue, which indicate that her headaches were typically occurring only intermittently and were often mild or 2/10 in severity prior to the date last insured. As documented above on examinations in 2017, the claimant appeared pleasant, cooperative, and in no acute distress, she

---

[195] 20 C.F.R. § 404.1520(a)(3). See also 20 C.F.R. §§ 404.1520b(c), 404.1513(a)(4).

[196] AR 877-878.

[197] AR 878-879.

[198] AR 879-880.

had painless full range of motion in her head and neck, she had normal mental status, characterized by including full orientation, intact recent and remote memory, appropriate attention span, concentration, fund of knowledge, and speech, and she retained grossly normal neurologic function, including 5/5 motor strength, normal gait, normal heel walk, normal toe walk, negative Romberg's signs, and intact cranial nerves (5F4-5, 8-9). She also had no evidence of musculoskeletal misalignment, asymmetry, crepitation, defects, tenderness, mases, effusions, decreased range of motion, instability, atrophy, or abnormal strength or tone in the neck, spike, ribs, or pelvis (5F4-5, 8-9). These unremarkable examinations findings do not corroborate the disabling symptoms/limitations described by the claimant's various lay witnesses. The undersigned is persuaded more by the contemporaneous evidence during the period at issue than the recall of the claimant's family and friends years after the fact.

The lay witness statements are likewise not fully consistent with the claimant's activities during the period at issue. As documented above, the claimant's activities included performing lifting, shopping, cooking, and driving for her ill father and mother, flying back and forth between Washington state and Las Vegas, attending weddings, graduations, and an outdoor airshow, and going on a monthlong motorhome trip. It seems somewhat inconceivable that, given the disabling limitations described by the claimant's various lay witnesses, the claimant could engage in any such activities.[199]

   c. *Relevant Witness Statements*

In its prior finding, the Court cited the relevant witness statements. Those statements are incorporated herein, by reference.

   d. *Analysis*

Plaintiff argues that the ALJ violated the Court's remand because the Court articulated in its prior order that the statements largely corroborated Plaintiff's complaints of migraine headaches and back pain. While Plaintiff is correct that the

---

[199] AR 807-808.

Court found the witness statements supportive of Plaintiff's complaints, the ALJ did not discount the witness statements for inconsistency. Rather, the ALJ reasoned that the witness statements were written years after the fact and were inconsistent with the medical records that were written contemporaneously.

The Ninth Circuit has ruled that an ALJ's reasoning that a medical source's opinions were inconsistent with the contemporaneous medical records was a legitimate reason to assign limited weight to the opinions.[200] Similarly, the Court concludes that the reason articulated by the ALJ – that the third-party witness statements were made years later and inconsistent with the contemporaneous medical evidence is a legitimate reason to have discounted the statements.

Additionally, although the ALJ did not include the inconsistency of the newer third-party statements as part of her reasoning, the Court notes that the statements contain conflicting testimony. In particular, the recent statement submitted by Plaintiff's sister states that during the relevant time period she and Plaintiff's brother were working, and their mother's home care fell on Plaintiff.[201] She also stated that their neighbors' children did not begin to come over to take care of their mother until 2020.[202]

---

[200] *Eichenberger v. Kijakazi*, No. 22-35937, 2023 WL 5928483 (9th Cir. Sept. 12, 2023).

[201] AR 1118.

[202] *Id.*

1    Given the record now before the Court, including the ALJ's articulated

2    reasoning for given limited weight to the third-party opinions, the Court concludes

3    that Plaintiff has not met her burden to show consequential error. Because the

4    Court finds that substantial evidence supports the ALJ's reasoning, the Court

5    declines to remand as to this issue.

6    **C.    Medical Opinions: Plaintiff fails to establish consequential error.**

7        Plaintiff argues the ALJ erred by finding that the opinion of the treating

8    neurologist, Dr. Lee, was not persuasive because it was not supported by his own

9    exams before or after the DLI.[203] Plaintiff argues that the ALJ erred in reasoning

10   that the "normal" findings during examinations were not relevant to the issue of

11   migraine headaches.[204] She also argues that the Court in its prior order found that

12   Dr. Lee had reviewed the 2018 MRI films and they were consistent with the 2017

13   x-rays.[205] She argued that the ALJ erred in finding Dr. Lee's opinions inconsistent

14   with the record and with Plaintiff's daily activities.[206] The Commissioner responds

15   that the ALJ articulated examination findings that were inconsistent with Dr.

16   Lee's opinions.[207]

17

18   _____

18   [203] ECF No. 6.

19

20   [204] *Id.*

20

21   [205] *Id.*

21

22   [206] *Id.*

22

23   [207] ECF No. 8.

DISPOSITIVE ORDER - 42

1    The Court addresses each of these arguments. As is explained below, the

2    ALJ reasonably found that Dr. Lee's opinions were not sufficiently explained or

3    supported by the record.

4        1.    <u>Standard</u>

5    An ALJ must consider and articulate how persuasive she found each medical

6    opinion, including whether the medical opinion was consistent with and supported

7    by the record.[208] The factors for evaluating the persuasiveness of medical opinions

8    include, but are not limited to, supportability, consistency, relationship with the

9    claimant, and specialization.[209] Supportability and consistency are the most

10   important factors.[210] When considering the ALJ's findings, the Court is constrained

11   to the reasons and supporting explanation offered by the ALJ.[211]

12       2.    <u>Dr. Lee's opinion</u>

13   On October 12, 2020, Dr. Lee completed a medical source statement.[212] He

14   stated that he first examined Plaintiff on March 9, 2017, and last examined her on

15   October 8, 2020.[213] Dr. Lee said that Plaintiff had the following diagnoses: lumbar

---

[208] 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[209] 20 C.F.R. § 416.920c(c)(1)–(5).

[210] *Id.* § 416.920c(b)(2).

[211] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

[212] AR 571-573.

[213] AR 571.

spondylolisthesis, degenerative disc disease of the lumbar spine, migraines, and tension headaches.[214] He said that her symptoms were back pain and migraines; that her relevant test result was a 2018 MRI of the lumbar spine; that she would need to lie down in the afternoon for a couple hours; that her medications did not have side-effects; that she had no condition that would cause her pain; and that she took the following medications: Emgality, Depakote, Topamax, Fioricet, and Tramadol.[215] Dr. Lee opined that working as a registered nurse would cause her condition to deteriorate due to her difficulty in moving patients.[216] He indicated that if she tried to work she would be absent for 4 days a month due to back pain and headaches, and that she was capable of performing work that was either light or sedentary in nature.[217] Dr. Lee stated that Plaintiff was capable of traveling by bus or subway and that his opined limitations had lasted since at least December 1, 2017.[218]

---

[214] *Id.*

[215] *Id.*

[216] AR 572.

[217] *Id.*

[218] AR 572-573.

1

2

3

4

     3.     <u>The ALJ's findings</u>

     When evaluating Dr. Lee's opinion, the ALJ gave several reasons for

concluding that it was not persuasive.[219]  First, the ALJ found that Dr. Lee's

opinion was inconsistent with his own examination findings.[220]  The ALJ stated:

5

6

7

8

9

10

11

12

13

14

15

> Dr. Lee's opinion is not persuasive. First, Dr. Lee's opinion is not
> supported by his own examination findings prior to the date last
> insured. For example, Dr. Lee's assessment of disabling headaches is
> not corroborated by his examinations of the claimant on March 9,
> 2017 and June 9, 2017, during which she was pleasant, cooperative,
> and in no acute distress, she had painless full range of motion in her
> head and neck, she had normal mental status, characterized by
> including full orientation, intact recent and remote memory,
> appropriate attention span, concentration, fund of knowledge, and
> speech, and she retained grossly normal neurologic function, including
> 5/5 motor strength, normal gait, normal heel walk, normal toe walk,
> negative Romberg's signs, and intact cranial nerves (5F4-5, 8-9).
> Dr. Lee's assessment of disabling back pain is also not substantiated
> by his examination findings in March 2017 and June 2017 showing an
> appropriate gait, stance, tiptoes, heel, heel to toe, and swing phase
> and no evidence of musculoskeletal misalignment, asymmetry,
> crepitation, defects, tenderness, mases, effusions, decreased range of
> motion, instability, atrophy, or abnormal strength or tone in the neck,
> spike, ribs, or pelvis (5F4-5, 8-9). These unremarkable examinations
> findings do not support Dr. Lee's conclusion that the claimant is
> disabled due to her back and headache conditions.[221]

16

17

     The ALJ continued on to reason that Dr. Lee's examination findings after

the date last insured were also not consistent with his opinion.[222]  She then

18

19

20

21

22

23

---

[219] AR 806-807.

[220] AR 806.

[221] AR 806.

[222] *Id.*

articulated that Dr. Lee's opinion was inconsistent with the other treatment records that indicated that Plaintiff suffered headaches that were intermittent and mild, with a severity of 2/10.[223]  Additionally, the ALJ reasoned that Dr. Lee's opinions were not consistent with Plaintiff's activities and articulated:

> Dr. Lee's opinion is not fully consistent with the claimant's active lifestyle prior to the date last insured, which included performing lifting, shopping, cooking, and driving for her ill father and mother, flying back and forth between Washington state and Las Vegas, attending weddings, graduations, and an outdoor airshow, and going on a monthlong motorhome trip. It seems somewhat inconceivable that someone with the limitations Dr. Lee assessed would have the ability to engage in such activities.

> Based on her ability to lift 40-pound water packs at Costco (9F9), a 24-pound turkey (9F14), and her mom (9F12, 15), as well as examination findings in 2017 demonstrating 5/5 motor strength, normal gait, and normal musculoskeletal range of motion (5F4-5, 8-9), the undersigned finds that the claimant retained the physical functional capacity to perform light exertional work, with some postural limitations, prior to the date last insured.[224]

Lastly, the ALJ reasoned that Plaintiff's allegations of light sensitivity are not supported by her normal cranial nerve examinations because part of a cranial nerve examination involves shining a penlight in the patient's eyes.[225]

---

[223] AR 806-807.

[224] AR 807.

[225] *Id.*

DISPOSITIVE ORDER - 46

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

    4.    Relevant medical records

    In its prior finding, the Court cited the medical records of sources who treated Plaintiff during the relevant period.  Those records are incorporated herein, by reference.

    5.    Analysis

    The Court notes that Dr. Lee's opinion does not state that working would cause Plaintiff's condition to deteriorate but that working specifically as a registered nurse would cause Plaintiff's condition to deteriorate because of the lifting involved.[226] Dr. Lee opined that Plaintiff was capable of performing a range of sedentary or light work.[227] For those reasons, the only opinion rendered by Dr. Lee that is at odds with the ALJ's formulated RFC is the opinion that Plaintiff would miss four or more days of work per month due to back pain and headaches.

    The Court will address the reasons given by the ALJ to discount Dr. Lee's opinions, although out of order.  The Court first notes that the ALJ's reasoning that Plaintiff's normal cranial nerve examinations are inconsistent with migraine headaches is flawed.  While the ALJ is correct that during a cranial nerve examination a penlight is often used during an examination of the 3rd, 4th, and 6th cranial nerves, it is used to have the patient track a moving target and at times used for pupillary light response, she fails to recognize that Dr. Lee is a board-

_____

[226] AR 572.

[227] *Id.*

certified neurologist who is trained to perform a cranial nerve examination in a manner that would not trigger a migraine. [228]

As noted, the period at issue is the period on or before Plaintiff's date last insured of December 31, 2017. The ALJ was therefore correct to review Dr. Lee's treatment notes for the two examinations he performed on Plaintiff in 2017. The ALJ noted that Dr. Lee's examination findings were not supportive of the Dr. Lee's assessment of disabling head pain and disabling back pain.[229] Because the Court in its prior order found that Dr. Lee's treatment of Plaintiff after the date last insured, such as the 2018 MRI findings and the 2017 x-ray findings, might have given insight to Dr. Lee.[230] Here the ALJ did so, and considered that after the date last insured, despite MRI and x-ray findings Plaintiff had full range of motion, no musculoskeletal tenderness, and normal gait and stance.[231]

The Court then looks to the consistency of Dr. Lee's opinion and concludes that Dr. Lee's opinion that Plaintiff would be absent for four days a month is

---

[228] Merck Manual, _How to Assess the Cranial Nerves_ - Neurologic Disorders - Merck Manual Professional Edition, 2023. (merckmanuals.com – last viewed October 16, 2024.)

[229] AR 806.

[230] AR 883-884.

[231] AR 806.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

inconsistent with the record as a whole.[232] In her analysis of the consistency of Dr. Lee's opinions with the medical record, the ALJ considered that the contemporaneous medical records reflected that Plaintiff's headaches were usually triggered by poor choices, stress, and environmental factors and that they were intermittent and mild in severity.[233] The Court agrees with Plaintiff that the ALJ's reasoning that stress and environmental factors caused her headaches was not a good reason because those were not factors that were entirely within her control. Plaintiff also argues that the ALJ misconstrued the record by citing to her reports of mild headaches in 2013 and 2014, long before the relevant period.[234] Looking at the medical record, however, the ALJ is correct that in March 2017, Plaintiff had no migraines or headaches; in April 2017, Plaintiff had a headache after eating Philippno food; in May 2017 Plaintiff reported no headaches; in June 2017, Plaintiff reported no headaches; in July 2017, Plaintiff reported no headaches; in August 2017, Plaintiff reported one headache that was light sensitive and one headache that was mild; in September 2017, Plaintiff reported no headaches; in October 2017, Plaintiff reported one headache that lasted for 2 days; in November 2017, Plaintiff reported one headache after eating soy at a restaurant; and in

---

[232] 20 C.F.R. § 404.1520c(c)(1) (comparing the medical opinion in question to "*evidence* from other medical sources and nonmedical sources).

[233] *Id.*

[234] ECF No. 6.

December 2017, Plaintiff reported one mild headache due to irregular sleep, a tension headache, and one migraine.[235]

The Court has set forth its findings above as to the inconsistency of Plaintiff's activities and her allegations of disabling back pain during the relevant period. Here, the ALJ similarly found that Dr. Lee's opinions are inconsistent with the fact that during the relevant period Plaintiff was regularly lifting her mother, lifting heavy objects, traveling long distances, and participating in social events.[236] While the Court notes that the record does not support Dr. Lee's opinion that Plaintiff would be absent for four days per month, it does support his opinion that Plaintiff would be limited to a range of light or sedentary work.

Had Dr. Lee limited Plaintiff to less than light work, the Court would find concern that the record was lacking a medical opinion.  But the formulated RFC limiting Plaintiff to a range of light work with additional limitations is not inconsistent with Dr. Lee's opinion that Plaintiff could perform work at the light or sedentary exertional level, other than the limitation as to absences, which the ALJ adequately explained her reasoning to find unpersuasive.

---

[235] AR 522-524.

[236] AR 807.

6. <u>Summary</u>

It is the ALJ's responsibility to review and evaluate the conflicting evidence and medical opinions.[237] The ALJ meaningfully explained why she evaluated Dr. Lee's medical opinions as she did, and these reasons are supported by substantial evidence.

## IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.      The ALJ's nondisability decision is **AFFIRMED**.

2.      The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 6 and 8,** enter **JUDGMENT** in favor of the **Commissioner**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 28th day of October, 2024.

_____
EDWARD F. SHEA
Senior United States District Judge

---

[237] *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999).

DISPOSITIVE ORDER - 51